UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM R. FRAZIER, | ) | No. EDCV 07-1620 FFM |
| Plaintiff, | ) ) | MEMORANDUM DECISION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income benefits. On January 4, 2008 and April 18, 2008, plaintiff and defendant, respectively, consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the case management order entered on January 2, 2008, on September 10, 2008, the parties filed a Joint Stipulation detailing each party's arguments and authorities. The Court has reviewed the administrative record (the "AR"), filed by defendant on July 3, 2008, and the Joint Stipulation (the "JS"). For the reasons stated below, the decision of the Commissioner is reversed and remanded.

///

///

///

PROCEDURAL HISTORY

On March 17, 2005, plaintiff applied for Supplemental Security Income benefits. (AR 77-79.)  Plaintiff's application was denied initially and upon reconsideration. (AR 46-51, 63-67.)  Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 56.)  ALJ Jay Levine held a hearing on July 6, 2007.  (AR 277-305.) Plaintiff appeared with counsel and testified at the hearing.  (*See id.*)

On August 7, 2007, the ALJ issued a decision denying benefits.  (AR 11-20.) Plaintiff sought review of the decision before the Social Security Administration Appeals Council.  (AR 7.)  The Appeals Council denied review on November 21, 2007.  (AR 4-6.)

Plaintiff filed his complaint herein on December 19, 2007.

CONTENTIONS

Plaintiff raises four issues in this action:

1.   Whether the ALJ properly considered the opinion of Dr. Zimmerman, a treating psychiatrist;

2.   Whether the ALJ properly considered the opinion of William MacMorran, M.D., another treating psychiatrist;

3.   Whether the ALJ properly considered the lay witness testimony; and

4.   Whether the ALJ posed a complete hypothetical to the vocational expert.

STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d

1  573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a

2  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402

3  U.S. at 401.  This Court must review the record as a whole and consider adverse as

4  well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).

5  Where evidence is susceptible to more than one rational interpretation, the

6  Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452

7  (9th Cir. 1984).  However, even if substantial evidence exists in the record to support

8  the Commissioner's decision, the decision must be reversed if the proper legal standard

9  was not applied.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir.

10  2003).

11

12                                      DISCUSSION

13  1.    Dr. Zimmerman's opinion.

14         On June 9, 2004, Dr. Zimmerman, a physician at Riverside County Mental

15  Health, signed a Narrative Report (Adult) in which he diagnosed plaintiff with

16  schizoaffective disorder, depressed and post-traumatic stress disorder.[1]  (AR 246.)  In

17  pertinent part, Dr. Zimmerman reported that plaintiff was paranoid and disorganized in

18  his thinking and had delusions and auditory hallucinations.  He further reported that

19  plaintiff's psychotic symptoms influenced his behavior.  (*Id.*)  Dr. Zimmerman

20  reported that plaintiff's memory and judgment were moderately impaired.  He further

21  observed that there was evidence of insomnia, social phobia, depression, and anxiety;

22  in addition, plaintiff exhibited low social interest, isolation, and suicidal ideation.  (*Id.*)

23  _____

24         [1] There are two signatures on the report:  Dr. Zimmerman's and an illegible
25  signature by a "clinician."  The clinician's credentials are illegible.  (AR 246.)
    Defendant does not argue that Dr. Zimmerman is not the author of the report or that it
26  is not a statement from an acceptable medical source.  (*See* JS 4-6; JS 4 n.1.)  Thus, the
    Court assumes, without deciding, that the report represents Dr. Zimmerman's
27  judgment about plaintiff's impairment and limitations.  *See* 20 C.F.R. §§ 416.927(a)(2)
28  (defining "medical opinion"), 416.913(a) (defining "acceptable medical source").)

1    Dr. Zimmerman opined that plaintiff could manage funds on his own behalf, but

2    did not have the ability to maintain a sustained level of concentration; sustain repetitive

3    tasks for an extended period; or interact appropriately with strangers, co-workers, or

4    supervisors/authority figures.  (*Id.*)  Finally, Dr. Zimmerman opined that plaintiff could

5    not maintain a 40-hour workweek without decompensating and that plaintiff's

6    condition was chronic.  (*Id.*)

7    The ALJ did not mention Dr. Zimmerman's opinion in his decision.  (*See* AR

8    11-20.)  Plaintiff contends that this was reversible error.  (JS 3-4, 7.)  The Court agrees.

9    In evaluating physicians' opinions, the case law and regulations distinguish among

10   three types of physicians:  (1) those who treat the claimant (treating physicians); (2)

11   those who examine but do not treat the claimant (examining physicians); and (3) those

12   who neither treat nor examine the claimant (non-examining physicians).  *Lester v.*

13   *Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*,

14   94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 416.902, 416.927(d).  As a

15   general rule, more weight should be given to the opinion of a treating source than to

16   the opinions of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

17   647 (9th Cir. 1987); *see also* 20 C.F.R. § 416.927(d)(2).

18   The Ninth Circuit has held that an ALJ may reject a treating physician's

19   uncontradicted opinion on a medical impairment or the ultimate issue of disability only

20   with "clear and convincing" reasons supported by substantial evidence in the record.

21   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10

22   F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted).  If the treating

23   physician's opinion on the issue of disability is controverted, the ALJ must still

24   provide "specific and legitimate" reasons, supported by substantial evidence in the

25   record, in order to reject the treating physician's opinion.  *Lester*, 81 F.3d at 830;

26   *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).  "The ALJ could meet

27   this burden by setting out a detailed and thorough summary of the facts and conflicting

28   clinical evidence, stating his interpretation thereof, and making findings."  *Magallenes*

1  *v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted); *Orn v.*

2  *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

3      Here, Dr. Zimmerman's opinion was contradicted by the opinion of David

4  Bedrin, M.D., an examining psychiatrist to whom the ALJ gave "great weight."  (AR

5  18.)  On both August 5, 2004 and May 25, 2005, Dr. Bedrin opined, *inter alia*, that

6  plaintiff had no impairment in his ability to relate to and interact with supervisors and

7  coworkers; no problems dealing with the public; and no problems dealing with stress

8  and the pressures associated with an eight-hour workday and day-to-day work

9  activities.  (AR 192, 217.)  Thus, if the ALJ intended to reject Dr. Zimmerman's

10  opinion, he was required to provide specific, legitimate reasons for doing so.  *Lester*,

11  81 F.3d at 830.  However, the ALJ did not even mention Dr. Zimmerman's opinion.

12  An ALJ effectively rejects a treating physician's opinion where he ignores it in his

13  opinion and makes contrary findings.  "[The] failure to offer reasons for doing so [is]

14  legal error."  *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

15      Defendant argues that the ALJ was entitled to give less weight to Dr.

16  Zimmerman's opinion because:  (1) the opinion was in the form of checklist; (2) the

17  opinion was not supported by treatment records; (3) as the ALJ noted (AR 17),

18  plaintiff only had minimal and conservative health treatment; and (4) the ALJ's

19  reliance on Dr. Bedrin and the state agency psychiatrists was supported by substantial

20  evidence.  (JS 4-6.)  Even if defendant's characterization of the record were accurate

21  (an issue the Court need not decide), the ALJ did not cite these factors as grounds for

22  rejecting Dr. Zimmerman's opinion.  (*See* AR 11-20.)  The Court cannot affirm the

23  Commissioner's decision on grounds upon which the ALJ did not rely in reaching his

24  / / /

25  decision.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 n.2 (9th Cir. 2008); *see also*

26  *Pinto v. Massanari*, 249 F.3d 840. 847 (9th Cir. 2001).

27      Accordingly, remand is warranted for the ALJ to consider Dr. Zimmerman's

28  opinion.

B.   <u>Dr. MacMorran's opinion</u>.

On January 18, 2007, Dr. MacMorran completed a Mental Disorder Questionnaire on plaintiff's behalf.  (AR 257.)  Dr. MacMorran diagnosed plaintiff with schizoaffective disorder with secondary polysubstance abuse.  (*Id.*)  Dr. MacMorran indicated that plaintiff had a Global Assessment of Functioning score of 40[2] for the current year and the past year.  (*Id.*)  Dr. MacMorran reported that plaintiff's prognosis was poor, with chronic symptoms and a poor response to medication and therapy.  (*Id.*)  Dr. MacMorran also noted that plaintiff was anxious, depressed, paranoid, had poor memory, poor concentration, poor judgment, and low energy.  (*Id.*)  Dr. MacMorran further observed that plaintiff heard voices, engaged in isolative behavior, had poor hygiene, and was unable to follow simple one-step commands.  (*Id.*)

---

[2]  The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability.  American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR").  Axis V is the Global Assessment of Functioning (the "GAF"), or, for persons under the age of 18, the Children's Global Assessment Scale.  The GAF reports the clinician's judgment of the individual's overall functioning.  *Id.* at 32-33.  A GAF score of 31-40 indicates that the patient has "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . .)"  *Id.* at 34.

1       In his decision, the ALJ offered the followed analysis of Dr. MacMorran's

2  opinion:

3               I have read and considered the mental disorder questionnaire

4               completed by William MacMorran, M.D., on January 18,

5               2007 (Exhibit 12F, pp. 1-3).  I have given this statement of

6               disability little weight because it is not consistent with the

7               treatments notes or the medical findings.  [Plaintiff] did not

8               have poor response to medication and therapy, but when

9               compliant the treatment notes as well as [plaintiff's]

10              statements reflect that [plaintiff] was improved and stable.

11              His mental status examinations show that he was oriented,

12              not suicidal, cooperative, insight and judgment were okay,

13              and memory and concentration were okay (Ex 10F, pp. 3-13

14              and 13F, pp. 2-18).

15  (AR 19.)

16       Plaintiff argues that the ALJ provided insufficient reasons for rejecting Dr.

17  MacMorran's opinion.  (JS 7-9.)  The Court disagrees.  Plaintiff first contends that the

18  ALJ erred in citing, but failing to discuss, the treatment notes.  (JS 8 (citing *Embrey v.*

19  *Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).)  But earlier in the decision, the ALJ

20  discussed plaintiff's mental health treatment notes at some length.  As the ALJ noted,

21  plaintiff had "minimal and conservative treatment" for his mental health conditions

22  between February 2003 and May 2007.  (AR 17 (citing AR 240-52, 260-76).)  The

23  ALJ further observed that plaintiff received sporadic care prior to 2005, with "all

24  medical records containing minimal and conservative care with nothing more than

25  medication review."  (AR 17 (citing AR 240-52).)

26       As the ALJ further noted, *inter alia*, in 2005, 2006, and 2007, plaintiff received

27  prescription refills, but was often non-compliant; on January 26, 2006, for example,

28  plaintiff was "off his meds for two months and he was feeling more depressed."  (AR

18 (citing AR 272).)  By contrast, as the ALJ asserted, plaintiff reported on March 23, 2006 that his mood was improved on medication.  (AR 18 (citing AR 270); *see also* AR 250, 260, 261, 266, 267.)  The ALJ further noted that plaintiff stated on June 1, 2006 that he had stopped drinking two months previously, but plaintiff had a positive drug screen for methamphetamine and marijuana on June 8, 2006.  (AR 18 (citing AR 268).)  In addition, as the ALJ noted, on August 10, 2006, plaintiff's treating physician "encouraged sobriety."  (AR 18 (citing AR 267).)  Plaintiff is thus mistaken in asserting that the ALJ did not provide sufficient review of Dr. MacMorran's treatment notes to cite them as grounds for rejecting his opinion.

Moreover, the ALJ's cited reasons for not giving weight to Dr. MacMorran's opinion were specific, legitimate, and supported by substantial evidence.  First, as the ALJ reasoned, the treatment notes do indicate that plaintiff's symptoms (including his depressed mood and auditory hallucinations) improved when he was compliant with treatment.  (*See*, *e.g.*, AR 250, 260, 261, 266, 267; *cf.* AR 272.)  This contradicted Dr. MacMorran's opinion that plaintiff was not responsive to treatment.  (*See* AR 257.)  In addition, as the ALJ noted, plaintiff's mental health records consistently indicated that, on mental status examination, plaintiff lacked suicidal intent; had linear (if sparse) thought processes; and denied current auditory hallucinations and other psychotic symptoms.  (*See* AR 242-51, 260-63, 265-68, 270-72.)  In addition, several treatment notes specified that plaintiff was oriented times three and had "OK" insight and judgment, and was able to maintain concentration.  (AR 244, 247.)  An ALJ may reject a treating physician's opinion on the ground that it lacks support in the treating notes.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  As substantial evidence supports the ALJ's finding that Dr. MacMorran's opinion was not supported by the treating notes, the Court finds that remand is not warranted for the ALJ to reconsider the opinion.

/ / /

/ / /

C.      The lay witnesses.

In his decision, the ALJ offered the following analysis of plaintiff's mother's testimony:

> [Plaintiff's] mother offered the following testimony. She reported that [plaintiff] had lived with her for the past twelve years and he had no place else to live. She repeated [*sic*] that he had lived with her and her mother. She said she had seen him apply for many jobs, but he could not hold down a job for any length of time.
>
> She said that [plaintiff] would forget to shower and change clothes unless she reminded him. She thought [plaintiff] did not care about these things and he was depressed. She said that she supplied dish television for the family. She said that [plaintiff] could stay with her as long as he wants.
>
> [Plaintiff's] mother said she took [plaintiff] to his doctor appointments and she sat in on the sessions. She said that the medications helped but that it was not enough. She also stated that [plaintiff] had been abused by his stepmother when he was about 14 years old.
>
> [Plaintiff's] mother said she knew that [plaintiff] fights taking illegal drugs and in the past has taken them on and off. She said he had bad teeth, but she could not afford to have his teeth fixed.

(AR 18; *see also* AR 292-301.)

/ / /

The ALJ found plaintiff's mother less than credible, reasoning as follows:

> The severity of the symptoms alleged by [plaintiff's] testimony and the testimony of [plaintiff's] mother, sister and friend are not supported by the clinical and diagnostic evidence. [Plaintiff] has admitted that with medication compliance he feels much better. However, [plaintiff] is not motivated to go to work. He is able to live with his mother and she has testified that he can live with her as long as he wants. She provides for him financially and therefore there is no motivation for him to get a job and support himself.

(AR 17.)

Plaintiff argues that the ALJ did not provide sufficient reasons for finding plaintiff's mother's testimony to be lacking credibility. The Court disagrees. The Social Security regulations provide that the ALJ "may . . . use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 416.913(d). In turn, the Ninth Circuit has emphasized that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) (ALJ must consider lay testimony concerning a claimant's ability to work); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (same). This applies equally to sworn hearing testimony of witnesses (*see Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends and relatives (*see Schneider v. Commissioner of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

As a general rule, if the ALJ chooses to reject evidence from such sources, he may not do so without comment (*Nguyen*, 100 F.3d at 1467) and he must provide "reasons that are germane to each witness" (*Dodrill*, 12 F.3d at 919; *see also Smolen*,

1   80 F.3d at 1289 (dismissing witness testimony simply because witness is family
2   member not sufficiently germane to witness)).  However, if the reviewing court can
3   "confidently conclude that no reasonable ALJ, when fully crediting the testimony,
4   could have reached a different disability determination," the reviewing court may find
5   the error harmless.  *Stout*, 454 F.3d at 1056.

6          First, the Court is somewhat dubious of the ALJ's assertion that plaintiff's
7   mother could not be believed because, in light of her unstinting assistance, plaintiff had
8   no motivation for returning to work.  While this might be a valid reason for finding
9   that *plaintiff* had exaggerated his symptoms in order to avoid returning to the
10  workforce, the ALJ did not explain how plaintiff's alleged lack of a work ethic meant
11  that his mother was an unreliable witness.  (*See* AR 17.)  An ALJ cannot reject lay
12  witness testimony simply by discounting the credibility of a claimant, as lay witnesses
13  are competent to make "independent observations" of a claimant's pain and other
14  symptoms.  *See Dodrill*, 12 F.3d at 919 ("That the ALJ dismissed all the lay witness
15  testimony solely because he found the claimant was not credible suggests he may have
16  been under the mistaken impression that lay witnesses can never make independent
17  observations of the claimant's pain and other symptoms"); *but see Valentine v.
18  Commissioner, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our
19  conclusion that the ALJ provided clear and convincing reasons for rejecting
20  Valentine's own subjective complaints, and because Ms. Valentine's testimony was
21  similar to such complaints, it follows that the ALJ also gave germane reasons for
22  rejecting her testimony").

23         Nonetheless, the ALJ also reasoned that plaintiff's mother's testimony was in
24  conflict with the medical evidence, in that plaintiff admitted that his medication made
25  him feel better.  As discussed above, the ALJ's conclusion that plaintiff's treating
26  notes showed improvement was supported by substantial evidence.  An ALJ may
27  discount lay testimony if it conflicts with medical evidence.  *Lewis v. Apfel*, 236 F.3d
28  / / /

503, 511 (9th Cir. 2001).  Thus, the ALJ provided a reason for discounting plaintiff's mother's testimony that was sufficiently germane to plaintiff's mother.

Accordingly, remand on this ground is not warranted.

D.   <u>The hypothetical to the vocational expert</u>.

Plaintiff asserts that during the hearing, the ALJ posed to the vocational expert hypotheticals that did not include any of the impairments and functional limitations determined by Dr. Zimmerman or Dr. MacMorran in the opinions discussed above. (JS 15-16.)  Defendant counters that the ALJ provided sufficient reasons for rejecting the opinions and thus, it was not necessary for the ALJ to include the limitations Drs. Zimmerman and MacMorran found.  (JS 16-17.)  As both plaintiff and defendant assert, a vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy where the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Lewis*, 236 F.3d at 517 ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value").  Conversely, the hypothetical need not include limitations which do not find support in the record.  *See Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

As determined above, the ALJ properly rejected Dr. MacMorran's opinion. Thus, the ALJ did not need to include in his hypothetical to the vocational expert the limitations Dr. MacMorran identified.  The ALJ did not, however, provide any reasons for rejecting Dr. Zimmerman's opinion, and the Court has ordered the ALJ to consider it on remand.  *See* discussion, *supra*.  Accordingly, on remand, if the ALJ does not reject Dr. Zimmerman's opinion, the ALJ must include the limitations therein in a new hypothetical to the vocational expert.

/ / /

/ / /

CONCLUSION

For the foregoing reasons, the judgement of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


DATED: September 17, 2009                           /S/ FREDERICK F. MUMM
                                                    FREDERICK F. MUMM
                                                    United States Magistrate Judge